**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
In re:

FRANCESCO IADEVAIA,

    Debtor.

------------------------------------------------------------------x

Chapter 13

Case No. 25-35828 (KYP)

### MEMORANDUM DECISION DENYING
### CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN

**APPEARANCES:**

LAW OFFICES OF MITCHELL J. CANTER
*Counsel to Debtor*
511 Airport Executive Park
Nanuet, NY 10954
By: Mitchell J. Canter, Esq.
   Of Counsel

FOLEY, SCHUH & CIRIGLIANO, P.C.
*Counsel to Creditor Stephen Benot*
15 Scott's Corners Drive
Montgomery, NY 12549
By: Mark L. Schuh, Esq.
   Of Counsel

**HONORABLE KYU YOUNG PAEK**
**UNITED STATES BANKRUPTCY JUDGE**

### INTRODUCTION

Judgment creditor Stephen Benot ("Benot") objects to the confirmation of the

Chapter 13 plan of Francesco Iadevaia ("Debtor") on the basis that the Debtor's

unsecured debts exceed the statutory cap set forth in 11 U.S.C. § 109(e).  For the reasons

stated, Benot's objection is SUSTAINED, and the Debtor's request to confirm his plan is

DENIED.

## JURISDICTION

This Court has jurisdiction over the confirmation of the Debtor's Chapter 13 plan pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* (M-431), dated January 31, 2012 (Preska, C.J.) referring bankruptcy cases and proceedings to the Bankruptcy Judges of the Southern District of New York.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

## BACKGROUND

### A.    The Bankruptcy Filing and Schedules

On October 23, 2009, Benot obtained a judgment against the Debtor, and on October 2, 2019, Benot obtained a renewal judgment from the Supreme Court of the State of New York, County of Nassau, in the amount of $1,224,039.95 representing the amount still owing plus interest ("Renewal Judgment").[1]  On October 18, 2019, the Renewal Judgment was recorded with the county clerk in Orange County, New York.[2]

On August 1, 2025 ("Petition Date"), the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code.  On his *Schedule A/B: Property* ("Property Schedule"),[3] the Debtor listed his ownership of real property located at 37 Tamsen Avenue, Fort Montgomery, NY 10922 ("Residence") and represented that the value of the Residence is $572,000.00.  (Property Schedule, Part 1; *see also Appraisal Report of David W. Gotkin*, dated July 30, 2025 (ECF Doc. # 19-1 at ECF pp. 2-35) (concluding

---

[1]    A copy of the Renewal Judgment is available at ECF Doc. # 22-1 at ECF pp. 4-5.  "ECF Doc. # _" refers to documents filed on the electronic docket of this bankruptcy case.  "ECF p. _" refers to the page number imprinted across the top of the page by the Court's electronic filing system.

[2]    Proof of the recording is available at ECF Doc. # 22-1 at ECF p. 2 as well as at ECF Doc. # 19-1 at ECF p. 37.

[3]    A copy of the Property Schedule is available at ECF Doc. # 1 at ECF pp. 10-16.

that the estimated market value of the Residence is $572,000.00).)  On his *Schedule C: The Property You Claim as Exempt* ("Exemption Schedule"),[4] the Debtor claimed a state-law exemption for the Residence in the amount of $170,700.00.  (Exemption Schedule, Part 1.)

On his *Schedule D: Creditors Who Have Claims Secured by Property* ("Secured Creditors Schedule"),[5] the Debtor represented that two creditors held claims secured by the Residence.  First, PHH Mortgage Services ("PHH") held a first-priority mortgage claim in the amount of $305,920.72 ("PHH Claim").  (Secured Creditors Schedule, Part 1.)  Second, the Debtor listed a claim corresponding to Benot's Renewal Judgment in the amount of $1,224,069.95 secured by a judgment lien over the Residence ("Benot Claim").[6]  (*Id.*)  Three aspects of the Benot Claim, as described in the Secured Creditors Schedule, are notable:

1.  The Debtor represented that the "unsecured portion" of the Benot Claim was $957,990.67 ("Deficiency Claim").  The Deficiency Claim amount was calculated by first subtracting the PHH Claim from the value of the Residence ($572,000.00 minus $305,920.72) to determine the value of the collateral that would remain for Benot ($266,079.28).  Second, the Debtor subtracted that amount from the Benot Claim to get the unsecured Deficiency Claim amount ($1,224,069.95 minus $266,079.28 equals $957,990.67);

---

[4]      A copy of the Exemption Schedule is available at ECF Doc. # 1 at ECF pp. 17-18.

[5]      A copy of the Secured Creditors Schedule is available at ECF Doc. # 1 at ECF pp. 19-20.

[6]      The amount listed on the Secured Creditors Schedule is $30.00 greater than the Renewal Judgment amount.  The Court assumes this was a typographical error.

2. The Debtor stated his intention to "Avoid Judicial Lien Pursuant to 11 U.S.C. §522(f) and to be bifurcated into its secured & unsecured portions & paid through debtor's chapter 13 plan"; and

3. The Debtor represented that the Benot Claim was noncontingent, liquidated, and undisputed.

(*Id.*)

## B. Chapter 13 Plan, Lien Avoidance Motion, and Benot's Plan Objection

The Debtor filed his Chapter 13 plan ("Plan") on the Petition Date. (ECF Doc. # 7.) The Plan proposed to bifurcate the Benot Claim as follows: (i) as a secured claim in the amount of $95,379.28, and (ii) as an unsecured claim in the amount of $1,128,690.67. (Plan § 3.3.)

On October 14, 2025, the Debtor moved under 11 U.S.C. § 522(f)[7] to avoid Benot's judgment lien to the extent it impairs the Debtor's exemption over the Residence ("Lien Avoidance Motion"). (ECF Doc. # 19.) No party objected to the Lien Avoidance Motion, the Court granted the motion by order dated December 4, 2025 ("Lien Avoidance Order") (ECF Doc. # 23), and the Lien Avoidance Order bifurcated the Benot Claim as follows: (i) as a secured claim in the amount of $63,356.47, and (ii) as an unsecured claim in the amount of $1,160,683.50. (Lien Avoidance Order at 2.)

Benot filed objections to the Plan on the basis that, as of the Petition Date, the Debtor's unsecured claim amount exceeded the statutory cap set forth in 11 U.S.C. § 109(e). (ECF Doc. ## 22, 42.) The Debtor responded to Benot's arguments (ECF Doc.

---

[7] Section 522(f) allows a debtor to "avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs" their bankruptcy exemption. 11 U.S.C. § 522(f).

# 36), the Court heard oral argument on July 21, 2026, and took the matter under advisement.

## DISCUSSION

**A.     Applicable Legal Standards**

Confirmation of Chapter 13 plan is governed by 11 U.S.C. § 1325.  Section 1325(a)(1) requires that the plan comply "with the provisions of [Chapter 13] and with the other applicable provisions of [the Bankruptcy Code]."  11 U.S.C. § 1325(a)(1). Eligibility to be a Chapter 13 debtor is governed by section 109(e), which provides:

> Only an individual with regular income that owes, *on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $526,700* and noncontingent, liquidated, secured debts of less than $1,580,125 . . . may be a debtor under chapter 13 of [the Bankruptcy Code].

11 U.S.C. § 109(e) (emphasis added).  "In contrast to the provisions involving Chapter 7 debtors, Chapter 13 debtors cannot owe debts in too large an amount and still expect to take advantage of the streamlined rehabilitative scheme provided in chapter 13." *Napolitano v. Rumbin* (*In re Rumbin*), 606 B.R. 31, 36 (Bankr. D. Conn. 2019) (quoting 2 COLLIER ON BANKRUPTCY ¶ 109.06 (16th ed. 2019)) (internal quotation marks omitted). Failure to satisfy the eligibility requirements set forth in section 109(e) constitutes grounds for denial of confirmation.  *See In re Prosper*, 168 B.R. 274, 280 (Bankr. D. Conn. 1994) (sustaining chapter 13 trustee's objection to plan for failure to meet section 109(e)'s eligibility requirements).

"The debtor has the burden of establishing eligibility under § 109(e)." *In re Shukla*, 550 B.R. 204, 210 (Bankr. E.D.N.Y. 2016) (citing supporting authorities). "While a § 109(e) analysis generally begins with a review of the debtor's schedules, a court may also consider materials outside of the debtor's schedules." *Rumbin*, 606 B.R.

at 36 (citing supporting authorities); *see also In re Jerome*, 112 B.R. 563, 566 (Bankr. S.D.N.Y. 1990) ("The reason for allowing courts to look beyond schedules and petitions is to prevent a debtor from circumventing the rules.  If the court could not examine the value of the collateral, a debtor could file unsecured debt [in an amount just below the section 109(e) limit], without the creditors being able to dismiss the Chapter 13.") (quoting *United States v. Edmonston*, 99 B.R. 995, 999 (E.D. Cal. 1989)).

Section 506(a) of the Bankruptcy Code bifurcates an undersecured creditor's claim into (i) a secured claim to the extent of the value of the collateral, and (ii) an unsecured claim for the remaining deficiency:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

11 U.S.C. § 506(a).  "It is now settled law that pursuant to 11 U.S.C. § 506(a), the secured debt above the value of the security should be included as an unsecured debt" when calculating the debt total under 11 U.S.C. § 109(e).  *Jermone*, 112 B.R. at 566 (citing supporting authorities); *see also* 2 COLLIER ON BANKRUPTCY ("COLLIER") ¶ 109.06 (16th ed. 2026) ("Most courts, including the Courts of Appeal for the Fourth, Seventh and Eighth Circuits, have held that the valuation test of section 506(a) should be used in making a determination as to whether there is an unsecured deficiency.  That test deems a debt secured only to the extent of the value of the collateral.") (footnote omitted); *Rumbin*, 606 B.R. at 38 (citing supporting authorities); *In re Rifkin*, 124 B.R. 626, 629

6

(Bankr. E.D.N.Y. 1991) (same) (Duberstein, B.J.);[8] *but see In re Morton*, 43 B.R. 215, 220 (Bankr. E.D.N.Y. 1984) (ruling that section 506(a) does not apply to a determination under section 109(e)).

**B.    Analysis**

The Debtor's schedules here establish that he was ineligible to be a Chapter 13 debtor on the Petition Date.  As stated, section 109(e) requires that a Chapter 13 debtor have noncontingent, liquidated, unsecured debts under $526,700 as of the date of the filing.  11 U.S.C. § 109(e).  The Debtor's own Secured Creditors Schedule shows that, based on the appraised value of the Residence and the amount owed to PHH, the remaining value of the collateral would be insufficient to fully secure the Benot Claim.  In recognition that the Benot Claim was undersecured, the Debtor correctly calculated the unsecured portion of the Benot Claim using the bifurcation formula set forth in 11 U.S.C. § 506(a).  The Debtor concluded that Benot's Deficiency Claim under section 506(a) was $957,990.67.  Because the Deficiency Claim exceeds section 109(e)'s limit for unsecured claims, the Debtor is ineligible to be a Chapter 13 debtor, and the Plan cannot be confirmed.

The Debtor's arguments in support of Plan confirmation lack merit.  The Debtor argues that the Court should not consider the Deficiency Claim when calculating section 109(e)'s unsecured debt limit because the Debtor did not include such claim in his *Schedule E/F: Creditors Who Have Unsecured Claims* ("Unsecured Creditors Schedule").[9]  But, as established by the authorities cited *supra*, the unsecured deficiency

---

[8]     However, a deficiency claim is not included in the unsecured debt total when the debt is nonrecourse debt.  COLLIER ¶ 109.06.

[9]     A copy of the Unsecured Creditors Schedule is available at ECF Doc. # 1 at ECF pp. 21-24.

claim established under section 506(a) is included when calculating the total amount of unsecured claims under section 109(e).

The Debtor next argues that the Court should not consider his stated intention in the Secured Creditors Schedule to seek partial avoidance of Benot's judgment lien under 11 U.S.C. § 522(f). Eligibility must be determined as of the bankruptcy filing and should not include the results of a future motion under section 522(f), the Debtor argues.[10] This argument is moot. The Court's eligibility ruling does not depend on the partial avoidance of Benot's judgment lien pursuant to the Lien Avoidance Order. Even without taking such lien avoidance into consideration, Benot's Deficiency Claim – which was established by the Debtor's own bankruptcy schedules – far exceeds section 109(e)'s unsecured debt limit.

[*remainder of page intentionally blank*]

---

[10]    The COLLIER treatise disfavors consideration of future lien avoidance motions under section 522(f) when determining eligibility:

> In Scovis v. Henrichsen (*In re* Scovis), the court held that such a debt should be treated as an unsecured debt because, even though the lien was not avoided on the date of the petition, the ultimate status of the debt as unsecured was "readily ascertainable." This conclusion seems incorrect, because it is not certain as of the date of the petition that a lien will be avoided. A lien is avoided under section 522(f) only if the debtor files a motion to avoid the lien. Unlike a determination under section 506(a) that a lien is undersecured, avoidance of a lien under section 522(f) can be sought only by the debtor, and a debtor could decide not to seek avoidance of a lien.

2 COLLIER ¶ 109.06.

## CONCLUSION

For the reasons stated, the Debtor's request to confirm the Plan is DENIED. Counsel to Benot shall upload a proposed order consistent with this Memorandum Decision to the Court's eOrders system.  A status conference shall be held on Tuesday, August 18, 2026 at 10:00 a.m. to discuss conversion or dismissal of the case.

/s/ **Kyu Y. Paek**

**Dated: August 3, 2026**
**Poughkeepsie, New York**



_____
**Hon. Kyu Y. Paek**
**U.S. Bankruptcy Judge**

9